IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-cr-30004 |
| ) | |
| GLENN WOODEN, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Glenn Wooden's pro se motions to suppress evidence (d/e 53, 54). For the reasons set forth below, Defendant's motions are both DENIED.

## I. EVIDENTIARY HEARING

An evidentiary hearing on a motion to suppress evidence is required only when "a substantial claim is presented" and "there are disputed issues of material fact which will affect the outcome of the motion." United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004). A defendant seeking an evidentiary hearing bears the burden of specifically alleging a "definite disputed factual issue" and demonstrating its materiality. United States v. McGaughy, 485

F.3d 965, 969 (7th Cir. 2007) (quoting United States v. Martin, 422 F.3d 597, 603 (7th Cir.2005)).  Here, Defendant's account of the facts relevant to this case is entirely consistent with the factual background provided by the Government.  The parties do not disagree about what occurred, but only about what legal conclusions the Court should draw from the undisputed facts.  Accordingly, an evidentiary hearing is not required.

## II. BACKGROUND

In June 2018, the Quincy Police Department and the Illinois State Police began investigating Defendant after receiving information that he was selling methamphetamine.  During the investigation, police arranged for an informant (the confidential source, or "CS") to purchase methamphetamine from Defendant.  The CS bought methamphetamine from Defendant on June 13, June 18, and June 28, 2018, and secretly recorded each transaction with a concealed audio/video recording device.  According to Defendant, one or more of these transactions took place after Defendant invited the CS into Defendant's car, the door of which was closed.  See d/e 53, p. 10; see also d/e 62, pp. 1–2 ("[W]hen, I (wooden) invited the informant into my vehicle no one

else could overhear or see us in the privacy of my vehicle concerning illicit acts that was conducted."). The police did not obtain a warrant prior to recording Defendant.

On June 28, 2018, police obtained a search warrant for Defendant's residence from an Illinois state court judge in the Circuit Court of the 8th Judicial District of Illinois, Adams County. Inspector Justin Ebbing of the Quincy Police Department applied for the search warrant by submitting to the judge a three-page document entitled "SEARCH WARRANT," which included a description of Defendant's residence, a description of the evidence to be seized, and a seven-paragraph factual basis in support of the warrant application. The document is signed by Inspector Ebbing, and states that it was "subscribed and sworn to before [the judge] on June 28, 2018, at 10:52 a.m." The judge accepted the application and issued the requested search warrant. Police later searched Defendant's home and found 243.9 grams of methamphetamine.

On February 5, 2019, Defendant was charged in a four-count Indictment (d/e 1) with three counts of distribution of methamphetamine, for the three recorded sales to the CS, and with

one count of possession of methamphetamine with intent to distribute for the methamphetamine seized in the police raid on Defendant's residence. Defendant was initially represented by counsel, but, on May 31, 2022, Defendant moved to dismiss his appointed counsel and proceed pro se. After a <u>Faretta</u> hearing, the Court granted Defendant's motion, allowed Defendant to proceed pro se, and ordered defense counsel to remain as standby counsel.

Also on May 31, Defendant filed the two suppression motions now before the Court. Defendant's first motion (d/e 53) requests suppression of the recordings of the three drug purchases the CS made from Defendant, as well as "all intangible or tangible things that were seized" during those transactions, all "information that was used and considered as probable cause for search warrants," and the testimony of all law enforcement officers and other persons who were present when the recordings were taken and when evidence was seized. D/e 53, p. 1. Defendant's second motion (d/e 54) requests that the Court "quash and suppress" the search warrant issued for Defendant's house on June 28, 2018, and the methamphetamine and U.S. currency found during the search of the residence.

### III. ANALYSIS

**A.  The Recorded Drug Transactions Were Not "Searches" Under the Fourth Amendment.**

Defendant first argues that police violated his Fourth Amendment right to be safe from unreasonable searches by recording the methamphetamine purchases conducted by the CS on June 13, 18, and 28, 2018.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A warrantless search of an automobile is justified only when probable cause exists to believe that the car contains evidence of a crime.  <u>United States v. Edwards</u>, 769 F.3d 509, 514 (7th Cir. 2014).  However, there is no need to analyze the existence of probable cause for a search unless Defendant can first establish that police conducted a "search," under the Fourth Amendment, when they recorded the methamphetamine sales that Defendant made to the CS.

A search occurs when: (1) "the government physically intrudes without consent upon 'a constitutionally protected area in order to obtain information,'" or (2) "when an expectation of privacy that

society is prepared to consider reasonable is infringed." <u>United States v. Thompson</u>, 811 F.3d 944, 948 (7th Cir. 2016) (quoting <u>United States v. Jones</u>, 565 U.S. 400, 407 (2012), and <u>United States v. Karo</u>, 468 U.S. 705, 712 (1984)). Here, Defendant does not dispute that he consented to the CS's presence in the car where the recorded transactions took place. Instead, Defendant argues that he has "a right to privacy" that protects any conversation he has in his car as long as the car door is shut. D/e 53, p. 10.

The Seventh Circuit addressed a similar argument in <u>United States v. Thompson</u>, 811 F.3d 944 (7th Cir. 2016). In <u>Thompson</u>, the defendant invited a police informant into the defendant's apartment to buy drugs, and the informant surreptitiously recorded the transaction. <u>Id.</u> at 948. The defendant moved to suppress, arguing that he had a reasonable expectation of privacy in the information captured by the recordings. The Seventh Circuit rejected this argument as "frivolous," noting that a person does not "have a privacy interest in what he voluntarily discloses to an informant" and that surreptitious audio or video recordings taken by an informant do not transform the informant's actions into a search. <u>Id.</u> at 949–950.

Defendant Wooden's argument for suppression of the CS's recordings is identical in every relevant respect to the argument that the Seventh Circuit rejected in Thompson. By inviting the CS into Defendant's car, Defendant gave up any reasonable expectation of privacy that he might have entertained prior to consenting to Defendant's presence. Like the informant in Thompson, the CS who bought methamphetamine from Defendant Wooden could be called on to testify about what he saw and heard during his transactions with Defendant. The audio/video recordings of the CS's transactions with Defendant are therefore admissible, because Defendant has not alleged that they contain anything more than what the CS saw, heard, and could testify to. See id. at 950.

Moreover, the defendant in Thompson was recorded in his home, where the Fourth Amendment's protection against unreasonable searches is at its most potent. See Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018) ("At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'") (quoting Florida v. Jardines, 569 U.S. 1, 6 (2013)). Defendant Wooden was recorded in borrowed or rented cars, where his expectation of privacy would

have been considerably less.  See United States v. Zahursky, 580 F.3d 515, 522 (7th Cir. 2009) (discussing policy justifications for the automobile exception to the rule that warrantless searches are per se unreasonable).  Defendant's first motion to suppress is, therefore, denied.

**B.  The Search Warrant Issued on June 28, 2018 Was Supported by Probable Cause.**

Defendant's second motion to suppress (d/e 54) seeks to exclude the U.S. currency and the 243.9 grams of methamphetamine that were discovered during the search of Defendant's residence.  Defendant argues that the search warrant authorizing the June 28, 2018 search of his residence was invalid because Inspector Ebbing's application was not supported by an affidavit.

The Fourth Amendment requires that a warrant be issued "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV.  "The oath requirement is no technical or trivial component of the Warrant Clause of the Fourth Amendment." United States v.

Chapman, 954 F.2d 1352, 1370 (7th Cir.1992). Therefore, "where a warrant is issued unsupported by oath or affirmation, it is invalid under the Fourth Amendment." United States v. Vargas–Amaya, 389 F.3d 901, 904 (9th Cir.2004).

Here, however, Inspector Ebbing's warrant application was supported by an oath or affirmation. The second and third pages of the warrant application document submitted to the Adams County judge contain a description of Defendant's residence, a list of items sought to be seized, and a seven-item statement of facts supporting a finding of probable cause for the search. The document is signed by Inspector Ebbing and by the judge, and clearly states that it was "subscribed and sworn" before the judge at 10:52 a.m. on June 28, 2018.

It is irrelevant that the document is not labeled as an "affidavit." Black's Law Dictionary defines "affidavit" as "A voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths." Affidavit, BLACK'S LAW DICTIONARY (11th ed. 2019). Under that definition, the second and third pages of the warrant application document submitted by Inspector Ebbing include an affidavit. The

document includes a voluntary declaration of facts, it is written down, and it is sworn to by Inspector Ebbing before the Adams County judge, who was unquestionably an officer authorized to administer oaths. But even if the document was not technically an affidavit, "[t]he Fourth Amendment does not require that probable cause be established by an affidavit." United States v. Mendel, 578 F.2d 668, 673 (7th Cir. 1978). The statements need only be supported by "Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (sworn, unrecorded oral statements); Campbell v. Minnesota, 553 F.2d 40, 42 (8th Cir. 1977) (sworn oral statements). Defendant does not dispute that Inspector Ebbing did, as the signed application indicates, swear to the facts asserted in the affidavit under oath before a judge. Accordingly, the Court finds that the Fourth Amendment's "Oath or affirmation" requirement was satisfied.

Defendant does not explicitly challenge the validity of the warrant on any grounds other than the supposed lack of an affidavit. To the extent that Defendant does challenge the sufficiency of the support in the warrant application for the Adams County judge's probable cause determination, however, that

determination is affirmed. A search performed pursuant to a valid warrant is presumptively valid. Archer v. Chisholm, 870 F.3d 603, 613-14 (7th Cir. 2017). A warrant is valid under the Fourth Amendment if the warrant: (1) is issued by a neutral and disinterested magistrate; (2) establishes probable cause that the evidence sought in the warrant will help to secure an arrest or conviction for a particular offense; and (3) describes with particularity the place to be searched. Id. at 614 (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

An affidavit establishes probable cause when it "sets forth sufficient evidence to convince a reasonable person that a search will uncover evidence of the alleged crime." United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009) (citing United States v. Carmel, 548 F.3d 571, 575 (7th Cir. 2008)). The determination of probable cause is a "practical, commonsense decision" in which the judge who issues a warrant takes "all of the circumstances set forth in the affidavit before him" into account. United States v. Sewell, 780 F.3d 839, 845 (7th Cir. 2015). The issuing judge's finding of probable cause is afforded "great deference" on review and is upheld as long as the issuing judge "had a substantial basis to conclude

that the search was reasonably likely to uncover evidence of wrongdoing." United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010). Accordingly, even "doubtful cases" are "resolved in favor of upholding the warrant." United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000) (quoting United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)).

Here, the warrant application included Inspector Ebbing's sworn testimony that law enforcement had arranged three separate controlled purchases of methamphetamine from Defendant, and that law enforcement officials either observed Defendant exiting his residence before or observed Defendant entering his residence after each transaction. Based on this sworn statement, a reasonable person would expect a search of Defendant's residence to uncover evidence of the alleged crime of distribution of methamphetamine. Therefore, the Court affirms the Adams County judge's finding of probable cause.

Defendant also conclusorily asserts that the Adams County judge was not a neutral and detached magistrate because he "served as a rubber stamp" for Inspector Ebbing. Defendant does not offer any support for this assertion, and nothing in the record

indicates any prejudice or lack of diligence on the part of the Adams County judge. Accordingly, the Court rejects Defendant's "rubber stamp" argument and finds that the warrant for Defendant's residence was issued by a neutral and disinterested magistrate.

### III. CONCLUSION

For the foregoing reasons, Defendant Glenn Wooden's motions to suppress (d/e 53, 54) are both DENIED.

ENTER: July 13, 2022

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE